Case number 21-5273, United States of America v. Robert England, argument not to exceed 15 minutes per side. Mr. Russ, you may proceed for the appellate. Good morning, Your Honors. I'm Ben Russ on behalf of Mr. Robert England. I'd like to reserve two minutes of rebuttal time, please. The area that I'd like to focus on is the district court's denial of the motion to suppress that Mr. England filed relating to a laptop computer that was later discovered to contain child pornography, which led to the substantive basis for his convictions. Just briefly, Mr. England was, I'll refer to him as Lieutenant England, because Mr. Robert England, who was the lieutenant of the Middleborough Fire Department, had his father, Mr. Robert England, who was the chief of the Middleborough Fire Department in Kentucky, as his supervisor. And further, the two of them lived together. Approximately one to two years prior to Mr. Lieutenant England being arrested on these charges, he was given a laptop computer by the Middleborough Fire Department, as were two other lieutenants that worked there. A spouse purpose for this was so that they could conduct business for the fire department and the computers were supposed to be for the use or could be for the use for other firemen if they needed to gain information about certain people and things that were related to department business. In practice, and the varying testimony to varying degrees about the three different computers, most of the time these lieutenants kept these computers more or less for their sole use. Mr. – or Lieutenant England in particular was very protective of the computer, and the testimony of various witnesses was that it was almost for his exclusive use. He would take it home at night. It was passport protected. He'd often lock the lieutenant's office in the fire station that contained the computer when he wasn't physically present. But you would agree that it was the property of the fire department, correct, and not the property of each department? Well, the fire department owned the computer, yes. That's not his… Why isn't that as positive since the text of the Fourth Amendment says the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures? It's not his effect. He does not have ownership in it, Your Honor, but as the magistrate court – or the magistrate and the district court found and the district court adopted, Mr. England did have a privacy interest in this computer. And I think that takes it out of the simple ownership context and moves it over into the analysis that's done in Matlock regarding whether there was actual authority of Mr. – or I'm sorry, Chief England to grant consent. Even in a privacy paradigm, I mean, there's various ways to think of a reasonable expectation of privacy. One would be a normative account of what we think is appropriate privacy. Another is an objective account is that you pull the populace and you'd ask, do you think somebody has a reasonable expectation of privacy? That's hard for me to see under either of those approaches. I bet you if you pull the populace and ask, do you think that your employer can look at your computer, your work computer, pretty much whenever they want, I think the answer would probably be, yeah, yes. It's a computer. I'm using it for work. So where does the reasonable expectation of privacy come from? Well, first of all, Your Honor, I would probably disagree that – well, I couldn't speak to what the populace would say, but I would respectfully disagree. That's the problem with this analysis is, I mean, I agree here. I was like, how do we go about it? Well, I think, Your Honor, particularly with the nature of the item, and to jump forward just a little bit, I think that the government's – or rather, law enforcement has conceded the only basis for this search was the consent that was received from Chief England. During his testimony, Chief England said, well, if I wanted to get a nozzle to a fire hose from one of the firemen, they would have to give it to me. I think that's probably true. Can you say – can you repeat what you just said, if I wanted what? Yes, Your Honor. During the suppression hearing, Chief England testified, and one of the – he was being questioned as to whether he felt that he had authority over all of the property of the fire department since he was the chief and the supervisor. And he said, well, yes, if I asked someone to provide me with a nozzle hose for one of our fire hoses, yes, that would be the case and that I think that I have authority over the property. I don't think the computer is equivalent to a fire hose for a lot of reasons, but the primary reason and the reason to answer your question, Judge Murphy, a little bit at least, the privacy interest is developed, I think, in the nature of what the item is and what the person keeps in that item. Older cases discuss if an employer gives you a filing cabinet and you have it under lock and key, but the purpose of the filing cabinet is to keep files from work, but you also keep your personal papers in there. Can your employer then let law enforcement search your private filing cabinet even though they paid for it? And I think the distinction that Matlock makes is that it's not an ownership issue. Once you get over to the issue of whether it's actual authority, it's whether it's common authority over the item. And in this circumstance, I guess I was thinking of analogies while I was sitting here. A landlord would have the right to allow someone to search a common area of his or her property in a building, but not the tenant's actual residence without the tenant's consent because there's no common authority for the landlord to do so, but the landlord owns it. I don't know whether the government issues you cell phones or not, but if they issued each of you cell phones, could the administrator of this court tell law enforcement they could search your cell phone because they own it? I kind of think the answer would be no. Well, I certainly think the answer would be no. If the computers were being provided, and you don't disagree that they were provided by the fire department. That's correct. So if they were provided in a way that made it clear that each one of these computers, it's issued to this lieutenant, but others are entitled to use it. So are you saying that each one of those others would have the right to say, no, nobody can look at this computer because I have something on it? I think that gets into the analysis that Matlock goes through over what the customs and cultures of the office space was. When they were initially distributed, I think that was the intent of what these laptops were for, that the lieutenants would primarily use them, but other officers could use them. The records show specifically that the intent was that the officers would use them for something in particular, or this is just your personal computer, but we've issued it to you because the fire department bought it. It was supposed to be for fire department business, and I'm not exactly sure what. I know that they looked up data about different individuals and things of that nature. That's what is bothering me here. If it was supposed to be for fire department business, is your position that by then putting personal stuff on it, even though that's not what it was issued for, the lieutenant, who mostly uses this computer, can shield it from having anybody look at it? Not because he put personal information on it, but because of the manner and use of it, the custom of the department. The testimony was relatively strong that almost nobody ever used the computer that was issued to Lieutenant England other than Lieutenant England, and that he had it password protected that only he knew, and that he kept it under lock and key, and that he took it home with him, and eventually that's where it was recovered, from the residence. So not the fact that he put personal information on it. It's that he has a privacy interest in that – the computer itself because regardless of what the intent was when it was issued, that was not how it was used over the 12 to 24 months that he had it in his possession. So I think that the manner of use that the district court conflates these two issues, conflates the issue of ownership. Do you think his father, instead of giving it over to law enforcement, suppose – I forget the name of the man who expressed concerns with what I do as deleting files – but so suppose he goes to Mr. England and expresses to Mr. England as well, okay, I'll just look at the computer. Would that be okay, do you think, or do you think that would also be a problem? I'm sorry, are you asking if the law enforcement officer asked Lieutenant England to look at the computer? So the father, Chief England, I guess. So the individual who sees him when he thinks he's deleting files, he calls the police. Instead of – suppose it's something that he just asked the employer effectively, Chief England, and announced his concerns to him. Could Chief England then, because it's a fire department computer, just go through it and such? I'm not sure of the answer to that exact question, but I think the more important question is could he turn it over to law enforcement? As the supervisor of the department, perhaps he would have access to the property, as he said, he had the authority to reassign these computers to different lieutenants if someone left, if someone was demoted. The reason I ask the question is I kind of, under Ortega, I kind of view him as somewhat connected, because under – Ortega says an employer, a public employer can search the office space for two purposes. One is just randomly need the office space to get your work done, and the other is to investigate workplace misconduct. And so it seems to me that this could be part of that, and if he can search it himself, I don't understand why he couldn't consent to having law enforcement search it. I wouldn't concede that he can search it himself necessarily. I think some of the fine points of the facts are important here. Another fireman – well, to take one small step back, Mr. – Lieutenant England was being investigated for allegedly having exposed himself to a minor in a Walmart bathroom. That led to his interrogation by the local police department, which after that he then took his computer and went home. During that time period of a matter of minutes after he was interrogated and then he had gone back to the station, another fireman wrote a police officer who he was friends with and basically said, well, he's on his computer. I wonder if he's deleting things he doesn't want people to find. So this was nothing more than a wild guess, to be quite honest. He didn't see anything on there. He didn't have any firm basis. The law enforcement acknowledges it would not have been sufficient to get a warrant based on that. So as far as circling back to the – if there was a – and Ortega talks about if there was suspicion of some kind of workplace misconduct, I don't think that this sort of bald assertion from someone – and if you read the entire exchange, I don't think that this gentleman cared for Lieutenant England either. So to have a workplace rival launch some sort of investigation that the police can then – or the chief can look through all of the property because of essentially a barefaced allegation, I think the facts in this particular case do matter in that regard. But you would agree that you don't think that's the cause. Ortega clearly says it's something to do with that. That's true. Well, I mean just to make the point that the allegation of this other coworker would have been insufficient. So I don't think that this could have caused some sort of workplace investigation on a disciplinary basis, which is the other reason, I believe, that Ortega says other than just general access to the premises that the items are in. And what about the failure to guard? I think – and presuming we've met any kind of the burden that there has not been any actual authority on the part of Chief England to grant this, I don't think he has apparent authority either under the Waller case. Even though on the face of it, it may appear to a law enforcement officer that the chief can do this, and obviously we're not all lawyers, and here we are arguing about very nuanced points as all of us being lawyers. They did nothing to kind of confirm whether there was anything that would allow this. And the language that's used in Waller is if there's an ambiguous situation, they went over to Mr. England's house where his roommate and father allowed them to search the computer because he said so. At the time, the only information they had was he had been accused of exposing himself to a minor and that a coworker suspected he might be doing something on his computer. So the failure of law enforcement to then flesh that out, to ask, well, okay, we need to establish better here that we have the actual authority, that Chief England can grant this, not simply because we asked him to but because there's some sort of basis. Waller says a person of reasonable caution – that this would cause a person of reasonable caution to question whether the third party has mutual use of the property. And… Can I see your line design counsel? Yes, I'm sorry. I'll save your time for a moment. That answers your question. I'll save the rest of my time. Thank you. Good morning, Your Honors. May it please the Court, Paul Crane on behalf of the United States. I'll also start with the Fourth Amendment issue, and we encourage the Court to affirm for the reasons that were thoroughly set forth by both the district judge and the magistrate judge. In particular, the facts that we feel are the most pertinent, and again, we're reviewing the factual – underlying factual findings for a clear error and viewing the light – viewing the evidence in the light most favorable to the government, given that they were the prevailing party below. First of all, the department did own the laptop. We think that that fact and all that flows from it, at least in the circumstances of this case… So are you saying that any time you're – you get a phone or a laptop or whatever it is from an employer that there's no privacy interest or the employer has the right to consent to the search? Well, with respect to the privacy interest, we're certainly not saying that. We're not challenging on appeal the finding that there was a reasonable expectation of privacy. We think this case can be resolved, as the district court and magistrate resolved it, on the fact that Chief England had common authority over the laptop. To the question of is there an – What common authority do you need? I mean we – as you suspect, we get laptops from the court and phones, so… Yes, Your Honor. So under Matlock, the test, which this court has said in Shekel is not perfectly clear, but there's a common authority or other sufficient relationship to the premises or effects, and particularly here, premises sought. And the court in Matlock also says that the others with authority, here the defendant, assumed the risk. And given the particular facts here of not only that the fire department owned the laptop or had the property interest in the laptop, the district court found – and this is on pages 1131 and 32 – that the culture, customs, and expectations of the fire department were that Chief England possessed complete control over all the laptops, the written policies of the fire department, and the expectations of the firefighters in the fire department. Or that the laptop would be used solely for work purposes. That's on pages 1125 and 1133 of the record. So what's the use? I wonder if you could clarify. So the key analysis in Matlock is, I think, in a footnote. Yes, Your Honor. It says validity rests on mutual use of the property by persons generally having joint access or control for those purposes. So you talked about all that evidence you just provided is pretty good evidence of joint access or control, but it also seems to establish a mutual use requirement, maybe, in addition to. It's not entirely clear to me. But if that were true, and if the facts were that England was basically the only person who used the laptop, would that suggest that Matlock's footnote is not satisfying? I want to answer your question, Your Honor. We don't take the position that there has to be, in fact, mutual use in practice in order to satisfy Matlock. I don't think that's the best reading of Matlock. How would you read it? Well, I think memory asserts that that also involves location as opposed to an effect. But I think it is getting to the authority or the ability to access, can when it talks about, or other sufficient relationship. So at a minimum, it doesn't seem like it has to be limited exclusively to use. At the same time, or sort of in addition, I also don't – I find it hard to imagine that if it was actually, in fact, actual use, then getting into those facts for every single thing where there's instances that a third party has the authority to access, the authority to use, would, I guess, be inconsistent with at least, as I understand the discourse cases in the Supreme Court case law on this issue. I mean, so Shekels – the one case I remember is the other individual who consented did have – did use it, so that she kept her things in the warehouse or the garage or whatever it was. So are there other cases that kind of accept this point that you basically just need joint access or control? To the point that it doesn't have to necessarily be like that you're required to have use? There are cases that – this was one of the issues that was specifically addressed below by the district court. There's – in terms of the sort of laptop computer device space, most of those cases are outside of this circuit. Zeng and Zhu in particular, I believe, were the names. There are, I believe, other cases, at least in terms of how the analysis, as I read these court's decisions, have not said that it is limited only to their needing to be used. In addition, I would note that in – there's evidence in this case that even though the defendant was definitely the primary user by far of the laptop, there were instances where, at the chief's direction, he had other people use the laptop. And I guess I would – in light of that, that feels at least akin to the chief himself using the laptop if this laptop has been given for work purposes that's consistent with the written policy and the expectations. I do think – so just switching gears slightly, another question that I have that – or I'm not certain how the cases fit together is Ortega's backlog. And the reason I – this is what I asked the other side. It would be strange for me to say that somebody can consent to the government searching an item if that person cannot search the item themselves. And Ortega sets a baseline in which an employer is allowed to search items in the workplace. Do you think that that Ortega test has to be met in order for the person who's giving consent to the law enforcement to be able to get consent? Because what sense does it make to say that I can't search the computer, but I can give consent to law enforcement to search the computer? That doesn't really make sense. I appreciate that point, Your Honor. And at least as I understand your question, I think by and large I agree with you. I don't want to say that there can't be any circumstance where those two inquiries don't have overlap. But, I mean, here there was a policy that the laptop had to be used for work purposes, couldn't be used for personal purposes. And there's ample testimony of that below. That was not how it was litigated given the findings of the magistrate or district court because of the timing of when the consent to search the laptop was given. It is not my own exposition that under an Ortega analysis that Chief England lacks the authority to search the laptop if this case came up in a different way, where there was information that he had about workplace misconduct on the laptop, and that was the basis for him searching. So you think that he would have the authority under Ortega to look at his workplace misconduct? I'll admit, if you'll let me, that I haven't thoroughly looked at all this court's case laws under Ortega. But with that caveat, yes, that Chief England would have that authority to – there is findings by the district court and testimony at the suppression hearing that Chief England had ultimate control over the laptop, could have reassigned it, could have taken it, could have directed its use at any point in time. That really wasn't disputed below. In light of that, that would seem to me consistent with the ability under Ortega if there was a different set of facts or if this case came up in a different way, where the chief was presented with workplace misconduct of the ability to look at the laptop just like he could have reassigned it, told it to be used by somebody else, and directed its use for work purposes. If this court doesn't find actual authority, but again, we think there's ample reason, we would sort of fall back on the alternative argument that there's apparent authority. It was eminently reasonable, as the little report found, for law enforcement to believe that Chief England did have actual authority. This was a fire department laptop. When they called and asked him to bring it, he did not raise any issue with his ability to do so. He brought it promptly. He even predicted, even though erroneously, what was going to be on the laptop. And unlike Waller, which is just a very different set of facts, as the district court, I think, thoughtfully explained here, there was no basis for law enforcement to question or think it was ambiguous about whether Chief England had authority over this piece of fire department equipment. With regard to apparent authority, the one question I have is I find it a little tricky. We have a case from 1996. I'm clicking on the name, but it says there's a difference between a mistake of fact and a mistake of law. And so a mistake of law, if it's not high qualified immunity, would not qualify for apparent authority. So if I know all the facts, and I think these facts arise to actual authority, I make the legal conclusion under the Fourth Amendment, we say that that's not entitled to apparent authority analysis. It has to be like a mistake about whether a person lives there because the person says I live here and the person is just lying or something like that. Do you think that this is a mistake of fact case? So that's the one concern I have with apparent authority is could it be interpreted to the officer thought just that his general control is enough to establish actual authority, and so it's really about a mistake of law. I'll admit, Your Honor, I'm not sure if I know whether my friend on the other side is pressing the lack of apparent authority based on a mistake of fact or a mistake of law. I think there isn't either here, to be honest. I don't think there is any actual, and this is consistent with the district court's finding, underlying fact that's in dispute as opposed to the conclusion to draw from those facts. So in light of that, I guess I should obviously defer to my friend on the other side. I think it's primarily a mistake of law type argument that there wasn't in fact actual authority, and it was unreasonable for law enforcement to believe there was actual authority. But the government, for the reasons set forth in our brief and set forth by the district court, would disagree with that conclusion. One factual point just to clarify, and then the court has any other questions. It's unclear from the suppression hearing transcript about the password. It is clear that this was the only laptop of the three that had a password on it. It's unclear whether other people knew it or not. At the trial, the defendant's father, the chief, stated that he was aware of what the password was, which was at least during the two weeks immediately preceding his seizure, the last four digits of the fire department phone number. So this wasn't a highly difficult-to-discern password, but that's the evidence in the record. If there are no further questions on this issue or the other issues, we'll rest on our brief and ask that you affirm. Okay, thank you. Thank you. Just briefly to address a few points, your Honor. Excuse me. The findings of the district court regarding the mutual use, that's what the purported use was. That was what was envisioned, but that wasn't what, in actual fact, the use was. So how – Chief England, I believe, testified that he never used the computer, that particular one, for any reason. I believe the testimony was anytime anybody else used that computer other than Lieutenant England, Lieutenant England was present. So again, what the district court wanted to believe or what was testified that should have happened was not what happened at all, according to what the record has presented, and I think that defeats the argument that this was for mutual use or that Chief England had a sufficient relationship with the item. He did not, and the department did not, even if that was what was supposed to have happened when Lieutenant England was given the computer. So I think that Matlock is controlling on the actual authority or lack thereof. Just to go back to the Ortega question that you asked Judge Murphy, I don't think, again, that there would have been sufficient cause to start a disciplinary action against Lieutenant England based on what was known at the time. Therefore, I don't think Ortega is applicable here. If someone simply came to their boss and said, I think that guy is looking at porn on his computer, and you said, why? Well, I just think he is. I don't think anyone would initiate a disciplinary action against the other person or even an investigation unless they had more to go on than that, and they did not. Lastly, the question that you asked relating to what the officer believed, I think the officer absolutely took it as he's the chief of the fire department. He can give consent if he wants to and did not do any kind of additional or further inquiry, and that's why under Waller, the government, or rather law enforcement, has failed to secure what they should have secured in order to get valid consent to search the computer. Thank you. Time is up. The case is submitted. Thank you both for your advocacy today.